McMORAN, O'CONNOR, BRAMLEY & BURNS, P.C.
Ramshorn Executive Centre
Bldg. D, Suite D-1
2399 Highway 34
Manasquan, New Jersey 08736
(732) 223-7711
Attorneys for Plaintiff,
Courtney Subocz

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| COURTNEY SUBOCZ,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>HANZO ARCHIVES, INC., HANZO ARCHIVES LIMITED, KEITH LASKA, DENIS MAURIN, VICKI WINNER, JOHN DOE (1-10) and ABC CORP. (1-10),<br><br>　　　　Defendants. | Civil Action No. 3:19-cv-17462-FLW-LHG<br><br>**FIRST AMENDED COMPLAINT AND JURY DEMAND** |

Plaintiff COURTNEY SUBOCZ, residing at 337 Winchester Drive, Brick Township, New Jersey, 08724, by way of Complaint against Defendants, says:

### THE PARTIES

1. Plaintiff Courtney Subocz ("Plaintiff") is a citizen and resident of New Jersey who has resided at all relevant times in Brick Township, New Jersey.

2. Defendant Hanzo Archives, Inc. is a Delaware corporation with its principal place of business allegedly located at 77 Water Street, 8th Floor, New York, New York 10005-4418.

3. Defendant Hanzo Archives Limited is a European company with its principal place of business at No.1 Leeds 26 Whitehall Leeds, West Yorkshire, LS12 1BE.

1

4. Upon information and belief, Hanzo Archives, Inc. is a wholly owned subsidiary of Hanzo Archives Limited. (Hanzo Archives, Inc. and Hanzo Archives Limited are hereinafter collectively referred to as "Hanzo" or the "Company").

5. Hanzo provides, *inter alia*, social media and Website archiving services for compliance, records management, and e-discovery.

6. Hanzo serves Fortune 500 corporations and organizations in the financial services, insurance, pharmaceutical, food and beverage, and entertainment industries; as well as national and state governmental agencies.

7. Hanzo does business throughout the United States and Europe, including in Ocean County, New Jersey.

8. Plaintiff was employed by Hanzo as a Product Director for seven months from September 2018 until Hanzo retaliated against her by unlawfully terminating her employment on March 12, 2019 because she disclosed, objected to and/or refused to participate in Defendants' fraudulent and/or unlawful practices.

9. At all relevant times, Hanzo was Plaintiff's "employer" within the meaning of the New Jersey Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1, *et seq.*

10. Defendant Keith Laska ("Laska") is a citizen and resident of Connecticut.

11. Laska is currently employed by Hanzo as Chief Executive Officer.

12. Laska knowingly participated in the decision to retaliate against Plaintiff by unlawfully terminating her employment with Hanzo.

13. At all relevant times, defendant Denis Maurin ("Maurin") was employed by Hanzo as Chief Technology Officer.

14. Maurin knowingly participated in the decision to retaliate against Plaintiff by unlawfully terminating her employment with Hanzo.

15. At all relevant times, defendant Vicki Winner ("Winner") was employed by Hanzo as a Human Resources Business Partner.

16. Winner knowingly participated in the decision to retaliate against Plaintiff by unlawfully terminating her employment with Hanzo.

17. Defendants John Does (1-10) are fictitious names for unidentified officers and/or employees of Hanzo who participated in the decision to retaliate against Plaintiff.

18. Defendants ABC Corp. (1-10) are fictitious names for unidentified entities affiliated with Hanzo who may have employed and/or jointly employed Plaintiff.

19. This Complaint does not contain a complete statement of the facts and shall not be deemed to waive, release, or otherwise relinquish any rights, remedies, or claims, all of which are expressly reserved.

## HANZO RETALIATED AGAINST PLAINTIFF

20. Plaintiff was hired by Hanzo on September 7, 2018 to serve as the Product Director for Hanzo Dynamic Investigator, a new product Hanzo was marketing to insurance companies, law firms and governmental agencies which it billed as being able to "supercharge digital investigations."

21. Hanzo represented publicly that Hanzo Dynamic Investigator was an investigation tool powered by artificial intelligence that used "powerful algorithms to search and analyze mountains of online data, identifying subjects across the web and social media sites."

22. In fact, as Plaintiff quickly learned after she began her employment with Hanzo, Hanzo Dynamic Investigator did not work as advertised. There was no functioning artificial intelligence platform, nor any algorithms capable of analyzing any data, much less "mountains of data." The product was a fiction and, as various Hanzo employees told Plaintiff, if she did not give the sales department a product to sell, they would "create one for you."

3

23. Hanzo's strategy was to "fake it until you make it."

24. Plaintiff worked for Hanzo from her home in New Jersey.

25. At the outset of her employment, Plaintiff worked tirelessly with the developers at Hanzo to try to create a product that actually worked and was ready to go to market, all while attending numerous conferences on behalf of Hanzo.

26. However, about two months after Plaintiff started work at Hanzo, and long before Hanzo Dynamic Investigator was close to being able to function as advertised, the Company made the decision to start selling the product over Plaintiff's objections.

27. Hanzo falsely represented to customers, including various federal, state and local governmental agencies, that the product was a fully functioning, artificial intelligence driven, automated digital investigation platform. Hanzo knew full well those representations were false.

28. In reality, the social media and web "investigations" that were supposed to be done electronically by artificial intelligence were secretly being done manually by Plaintiff and others at the Company. This fact was not disclosed by the Company to consumers.

29. Hanzo was instead manually inputting the investigation results from Plaintiff and others into the customer portal to create the false appearance that the results had been generated by some artificial intelligence program that did not exist much less function.

30. Plaintiff was repeatedly warned by Keith Laska, then the Chief Commercial Officer of Hanzo, and Kevin Nugent, the Vice President of Government Sales for Hanzo, not to say anything about the manual investigations during sales calls with prospective customers.

31. For example, Hanzo misled the Los Alamos National Laboratory (LANL), a governmental agency that hired Epiq Global, who in turn hired Hanzo, to vet 219 potential jurors and then monitor the social media postings of the selected jurors in a civil lawsuit against LANL.

4

32. Hanzo misled Epiq Global and LANL into believing that it was monitoring the social media postings of all the jurors on a nightly basis using algorithms and artificial intelligence. LANL paid a substantial amount of money to Hanzo for this work based on the false representation that it was being done by artificial intelligence. In fact, the work was being done manually by Plaintiff and other individuals hired by Hanzo.

33. Senior management at Hanzo was fully aware that Hanzo Dynamic Investigator did not work as advertised and of the fraudulent representations being made about its capabilities. Senior management not only ignored the problem, but actually supported the "fake it until you make it" philosophy that drove the Company's fraudulent scheme.

34. Plaintiff complained numerous times to senior management at Hanzo about the Company's fraud, including to Denis Maurin, Chief Technology Officer; Jim Murphy, Vice President of Products; Aidan Randle-Conde, Data Scientist; and Matthew Stringer, Service Delivery Manager, but Hanzo took no corrective action.

35. Hanzo's only response was to remove Plaintiff from key strategic discussions.

36. Finally, after being ignored for months, and on the eve of Hanzo engaging a third-party investigation company to assist in completing manual investigations and perpetuating the fraud, Plaintiff put her complaints in writing.

37. On March 12, 2019 at 9:55 a.m., Plaintiff sent an e-mail to, among others, Vicki Winner, a Human Resources Business Partner at Hanzo, in which Plaintiff complained that Hanzo was engaged in consumer fraud. Plaintiff complained that the Company was selling Hanzo Dynamic Investigator to consumers knowing full well that the product did not work and based on the false representation that it was powered by artificial intelligence.

38. Among other things, Plaintiff stated, "I have ethics and will not lie to clients about what is happening and trying to sell a product that does not exist."

5

39. Within five minutes of sending the e-mail objecting to Hanzo's fraud, Plaintiff was informed by Vicki Winner and Denis Maurin, Chief Technology Officer, that her employment with Hanzo was being terminated effectively immediately.

40. Hanzo alleges that the final decision to terminate Plaintiff's employment was made by Denis Maurin and Vicki Winner.

41. The only explanation Hanzo offered was that Plaintiff was allegedly being terminated for performance reasons. That alleged reason is a pretext.

42. Plaintiff never received a written performance review from Hanzo, including a 90-day review; nor did Hanzo ever release any information from the Appraisd system to Plaintiff, or warn her in writing that there were any concerns with her performance or behavior.

43. To the contrary: (a) on November 28, 2018, Plaintiff received an Amazon gift card from Hanzo thanking her for her "contribution" on the LANL project; (b) in January 2019, Hanzo recommended Plaintiff as a speaker at the 2019 IASIU Annual Seminar to be held in September 2019; and (c) on March 7, 2019, only five days before Hanzo fired Plaintiff, the Company recommended Plaintiff as a speaker at the OSMOSIS 2019 Conference to be held in October 2019.

44. The real reason Hanzo fired Plaintiff is in retaliation for her March 12, 2019 e-mail objecting to the Company's fraudulent activities. This is a blatant violation of the New Jersey Conscientious Employee Protection Act (CEPA), *N.J.S.A.* 34:19-1, *et seq.*

## PLAINTIFF'S DAMAGES

45. Since the termination of her employment with Hanzo on March 12, 2019, Plaintiff has engaged in a diligent job search.

46. Plaintiff has been unable to find comparable employment since the termination of her employment with Hanzo.

6

47. Plaintiff has sustained and will continue to sustain economic losses as a result of the Defendants' unlawful conduct, including but not limited to, lost compensation and benefits.

48. As a result of the Defendants' unlawful conduct, Plaintiff has suffered and will continue to suffer severe emotional distress, anxiety, pain and suffering, humiliation, career, family and social disruption and other grievous harm.

49. The decision to terminate Plaintiff's employment with Hanzo was made by the Defendants, including Laska, with malice and/or willful indifference to the unlawful retaliation against Plaintiff and her rights and the consequences of her termination.

50. Defendants' actions were meant to cause, or caused in a gross or reckless manner, egregious and unjustified harm to Plaintiff.

51. Upper management at Hanzo, including but not limited to Laska, either approved or acted with willful indifference or reckless disregard to the unlawful retaliation against Plaintiff, so as to warrant punitive damages against the Defendants.

## COUNT ONE

### (CONSCIENTIOUS EMPLOYEE PROTECTION ACT)

52. Plaintiff repeats the allegations of the prior paragraphs as if set forth herein.

53. During her employment with Hanzo, Plaintiff had a reasonable belief that the Defendants were engaged in an activity and/or practice that was fraudulent and/or in violation of a law, or a rule or regulation promulgated pursuant to law.

54. Plaintiff disclosed, objected to and/or refused to participate in Defendants' fraudulent and/or unlawful practices.

55. Defendants retaliated against Plaintiff by terminating her employment.

56. Defendants violated the Conscientious Employee Protection Act (CEPA), *N.J.S.A.* 34:19-1 *et seq.*

7

57. Defendants' upper management participated in the retaliation against Plaintiff.

58. Defendants' conduct was especially egregious.

59. Plaintiff has suffered damages as a result of the termination of her employment, including but not limited to economic losses and emotional distress.

WHEREFORE, Plaintiff demands judgment and an Order against Defendants: (a) awarding Plaintiff economic damages, including but not limited to, back pay, front pay, bonuses and all other compensation and benefits to which Plaintiff is entitled; (b) awarding Plaintiff damages for all other compensatory damages, including any economic loss, physical and emotional distress, anxiety, humiliation, emotional harm, pain and suffering, career, family and social disruption and other grievous harm; (c) awarding Plaintiff punitive damages; (d) awarding Plaintiff attorney's fees, costs and disbursements; (e) awarding Plaintiff pre and post judgment interest; and (f) awarding Plaintiff such other relief as the Court deems equitable and just.

## COUNT TWO

### (PUBLIC POLICY)

60. Plaintiff repeats the allegations of the prior paragraphs as if set forth herein.

61. Defendants terminated Plaintiff's employment with Hanzo because Plaintiff disclosed, objected to and/or refused to participate in fraudulent and/or unlawful practices during her employment with Hanzo.

62. Plaintiff's termination was contrary to public policy.

63. Plaintiff has suffered damages as a result of the termination of her employment, including but not limited to economic losses and emotional distress.

WHEREFORE, Plaintiff demands judgment and an Order against Defendants: (a) awarding Plaintiff economic damages, including but not limited to, back pay, front pay, bonuses and all other compensation and benefits to which Plaintiff is entitled; (b) awarding Plaintiff

damages for all other compensatory damages, including any economic loss, physical and emotional distress, anxiety, humiliation, emotional harm, pain and suffering, career, family and social disruption and other grievous harm; (c) awarding Plaintiff punitive damages; (d) awarding Plaintiff attorney's fees, costs and disbursements; (e) awarding Plaintiff pre and post judgment interest; and (f) awarding Plaintiff such other relief as the Court deems equitable and just.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues.

## DESIGNATION OF TRIAL COUNSEL

Plaintiff hereby designates Douglas S. Bramley, Esq. as trial counsel.

        McMORAN, O'CONNOR, BRAMLEY & BURNS, P.C.
        Ramshorn Office Centre
        Building D, Suite D-1
        2399 Highway 34
        Manasquan, New Jersey 08736
        Attorneys for Plaintiff

By:  /s/ Douglas S. Bramley
       DOUGLAS S. BRAMLEY

Dated: March 12, 2020

9

## CERTIFICATION PURSUANT TO R. 4:5-1

I certify that the matter in controversy in the within action is not pending in any other court, or any pending arbitration proceeding, nor is any such court proceeding or arbitration proceeding presently contemplated. There are no other persons who should be joined at this time.

                            McMORAN, O'CONNOR, BRAMLEY & BURNS, P.C.
                            Ramshorn Office Centre
                            Building D, Suite D-1
                            2399 Highway 34
                            Manasquan, New Jersey 08736
                            Attorneys for Plaintiff

                            By:   /s/ Douglas S. Bramley
                                    DOUGLAS S. BRAMLEY

Dated: March 12, 2020